IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No: 4:17-CV-00025-BR

| | |
|---|---|
| HATTERAS/CABO YACHTS, LLC, a foreign limited liability company, | ) ) ) |
| Plaintiff, | ) ) ORDER |
| v. | ) ) ) |
| M/Y EPIC (Official Number 747618, HIN: US-HATHR3021617), her engines, boilers, tackle, apparel etc., *in rem*, and ACQUAVIVA LTD., a foreign company, | ) ) ) ) ) ) |
| Defendants. | ) |

This matter is before the court on the motion to dismiss filed by defendants M/Y Epic (Official Number 747618, HIN: US-HATHR3021617) (the "Vessel"), her engines, boilers, tackle, apparel, etc., *in rem*, and Acquaviva Ltd. ("Acquaviva")[1], *in personam* (collectively "defendants"). (DE # 23.) Plaintiff Hatteras/Cabo Yachts, LLC ("Hatteras") filed a response in opposition, (DE # 26), to which defendants replied, (DE # 27). This matter is therefore ripe for disposition.

## I. BACKGROUND

On 17 September 2016, the Vessel caught fire resulting in smoke damage. (Compl., DE # 1, ¶ 8.) Hatteras alleges that following this incident, "the Vessel was brought to Hatteras's dock in New Bern, [North Carolina], at the Vessel's owner's request and with his approval."

---

[1] Acquaviva filed a Statement of Interest and Restricted Appearance pursuant to Rules C(6)(a) and E(8) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure for the purpose of defending against Hatteras's claims against the Vessel, *in rem*. (See Statement of Interest and Restricted Appearance, DE # 14, at 1.)

(Id.) Hatteras offered to perform a scope of repair to determine the repairs needed to correct any of the smoke damage. (Id. ¶ 9.) However, "the Owner refused to have the Vessel repaired by Hatteras." (Id.) Hatteras subsequently made multiple demands to the owner to remove the Vessel from the dock. (Id. ¶ 10.) Despite Hatteras's demands, the Vessel remained at Hatteras's dock for a five-month period, during which Hatteras provided dockage, electrical supply, and other maintenance services to the Vessel. (Id. ¶¶ 10-11.) Hatteras alleges that, even after it "engaged in various communications with the Vessel's owner and his legal representatives regarding the ongoing supply of necessaries for the Vessel," (id. ¶ 12), the owner continued to leave the Vessel at Hatteras's dock, (id. ¶ 13).

On 11 January 2017, Hatteras sent correspondence to the Vessel's owner detailing the necessaries provided to the Vessel, demanding payment for such, and stating its intention to assert its maritime lien in federal court should the owner fail to make payment. (Id. ¶ 14.) On 26 and 27 February 2017, "the Vessel's owner was present at the Hatteras dock and Hatteras again demanded payment of the outstanding debt for the supply of necessaries to the Vessel." (Id. ¶ 16.) According to Hatteras, "the Vessel's Owner departed the Hatteras dock on the Vessel on February 27, 2017, claiming to return but failing to do so, in an apparent effort to avoid payment of the costs incurred for provision of necessaries to the Vessel while it was at the Hatteras dock." (Id. ¶ 19.)

It is undisputed that Acquaviva took possession of the Vessel no later than 28 February 2017. (See Defs.' Supp. Mem., DE # 24, at 2; Statement of Interest and Restricted Appearance, DE # 14, at 1.) Hatteras now alleges that Acquaviva owes it $24,340.52 in outstanding charges for the provision of necessaries to the Vessel. (Compl., DE # 1, ¶¶ 17-19, 33.) On 2 March 2017, Hatteras commenced this action against the Vessel, *in rem*, and Acquaviva, *in personam*.

2

(DE # 1.) Hatteras asserts an *in rem* claim against the Vessel, in which it seeks to enforce a maritime lien based on the alleged breach of a maritime contract. (Id. ¶¶ 26-30.) Hatteras also asserts an *in personam* claim against Acquaviva for breach of maritime contract. (Id. ¶¶ 31-36.) Hatteras seeks to recover costs, attorneys' fees, and interest in this matter. (Id. ¶¶ 28, 35.) On 31 May 2017, defendants filed a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (DE # 23.)

### III. ANALYSIS

#### A. Subject Matter Jurisdiction

Defendants initially move to dismiss Hatteras's complaint for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1), on the ground that maritime jurisdiction under 28 U.S.C. § 1333 does not exist because a valid contract for necessaries was never formed between Hatteras and the owner of the Vessel. (Defs.' Supp. Mem., DE # 24, at 9.) The federal courts have original jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction[.]" 28 U.S.C. § 1333(1). Maritime jurisdiction extends to a contract dispute if the contract at issue is a maritime contract. Norfolk S. Ry. Co. v. Kirby, 543 U.S. 14, 23–24 (2004). Whether a contract is a maritime contract depends upon the "nature and character [of the contract]'—namely, 'whether it has reference to maritime service or maritime transactions.'" Village of Bald Head Island v. U.S. Army Corp. of Eng'rs, 714 F.3d 186, 196 (4th Cir. 2013) (quoting Kirby, 543 U.S. at 23). While a contract to repair a ship is maritime in nature, "a contract to build a ship is not." Kossick v. United Fruit Co., 365 U.S. 731, 735 (1961); see also South Carolina State Ports Authority v. Silver Anchor, S.A., 23 F.3d 842, 846 n.3 (4th Cir. 1994).

Here, defendants argue that contract for necessaries alleged in Hatteras's complaint did not exist and that there is no basis for the court's jurisdiction over this action because "[t]he only

3

contract or transaction ever agreed-to was for the manufacture of the Vessel." (Defs.' Supp. Mem., DE # 24, at 3.) The Fourth Circuit Court of Appeals, in Silver Anchor, 23 F.3d at 847, held that the existence of "a personal guaranty [was] dispositive on the merits," so "[t]o the extent that [the defendant] was challenging the court's jurisdiction on the ground that he gave no personal guaranty, he was also challenging the very existence of the [plaintiff's] cause of action." This case is similar to Silver Anchor in that defendants not only challenge the nature of the contract at issue, but the very existence of the contract on which Hatteras bases its claims. Because these issues are central both to subject matter jurisdiction and the claim on the merits, the court will assume that admiralty jurisdiction exists. See Rivanna Trawlers Unltd. v. Thompson Trawlers, Inc., 840 F.2d 236, 239 (4th Cir. 1988) ("[T]he proper course of action is for the district court to accept jurisdiction and address the objection as an attack on the merits.").

**B. Failure to State a Claim**

Defendants also move to dismiss Hatteras's complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. (Defs.' Supp. Mem., DE # 24, at 9.) Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Having reviewed the complaint and the allegations therein, the court finds that Hatteras has alleged sufficient facts to state a plausible claim for relief.

## IV. CONCLUSION

For the reasons set forth above, defendants' motion to dismiss, (DE # 23), is DENIED.

This 4 June 2018.

                                           W. Earl Britt
                                           Senior U.S. District Judge