IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:17–CV–00025–BR

| | |
|---|---|
| HATTERAS/CABO YACHTS, LLC, a foreign limited liability company, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ORDER ) |
| M/Y EPIC (Official Number 747618, HIN: US-HATHR3021617), her engines, Boilers, tackle, apparel etc., in rem, and ACQUAVIVA LTD., a foreign company, | ) ) ) ) ) |
| Defendants. | ) |

This matter is before the court on Hatteras/Cabo Yachts, LLC's ("Hatteras"), Brunswick Corporation's ("Brunswick"), and Versa Capital Management, LLC's ("Versa Capital") motions to dismiss Acquaviva Ltd. ("Acquaviva") and Daniel Spisso's ("Spisso") amended counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6). (DE # 59, 85, 87.) Also before the court are Brunswick's and Versa Capital's motions for a more definite statement. (DE ## 85, 87.) These motions have been fully briefed and are ripe for disposition.

I. BACKGROUND

This action arises out of disputes regarding two yachts manufactured by Hatteras, an entity owned by Brunswick [] until August 2013, and since by Versa Capital []. Spisso, Acquaviva's agent, entered into a sales contract for the construction of the first yacht, a model GT63 ("Vessel No. 1"), on or about 12 December 2012. In December 2014, Spisso filed suit in the Southern District of Florida, Case No. 1:14-cv-24616-FAM, alleging breach of contract, breach of warranties, [and] violation of the Magnuson-Moss Warranty Act, and seeking rescission, revocation, and damages arising from the purchase of Vessel No. 1. On 8 April 2015, Spisso entered into a settlement agreement with Hatteras, Brunswick, and others, which purported to resolve the litigation surrounding Vessel No. 1 and constituted a purchase/sale of Vessel No. 2.

On 17 September 2016, the day after Spisso arrived to take possession of Vessel No. 2, the vessel caught fire with him and guests onboard, resulting in smoke damage to the vessel. Thereafter, Vessel No. 2 was returned to shore where

> Hatteras took custody of it. Hatteras offered to repair the damage to the vessel while it remained in Hatteras' custody. Spisso did not authorize Hatteras to complete the repairs, and Hatteras insisted that he retake possession of the vessel. Hatteras notified Spisso that expenses for necessaries were accruing while the vessel remained in its possession. Spisso alleges that Hatteras refused to allow him to properly inspect the vessel and otherwise acted inconsistently with his purported ownership. Ultimately, the vessel remained at Hatteras' dock until Spisso retook possession of the vessel in February 2017. During that five month period, Hatteras alleges that the costs associated with the provision of necessaries totaled $24,340.52.
>
> Hatteras commenced this action against Vessel No. 2, in rem, and Acquaviva, in personam, on 2 March 2017. On 4 June 2018, the court denied Acquaviva's motion to dismiss. Acquaviva counterclaimed on 18 June 2018[.]

(Order, DE # 57, at 2–3 (citations omitted).)

On 24 August 2018, Hatteras moved to dismiss Acquaviva's 18 June 2018 counterclaim. (Id. at 3.) "Thereafter, Spisso filed a motion to intervene as defendant and counterclaim [against Hatteras] and attached an amended counterclaim on behalf of himself and Acquaviva." (Id.) On 10 January 2019, this court allowed Spisso's motion to intervene by interlineation and allowed Acquaviva and Spisso to amend their counterclaim. (Id.) As such, the court denied Hatteras' motion to dismiss the 18 June 2018 counterclaim. (Id. at 7.)

The fifteen-count amended counterclaim alleges the following: breach of the 2012 Purchase Agreement, (Am. Countercl., DE # 44-1, at 37); breach of the 2015 Settlement and Release Agreement, (id. at 39); breach of implied warranty relating to Vessel No. 1, (id. at 43); breach of express warranty relating to Vessel No. 1, (id. at 46); violations of the Magnuson-Moss Warranty Act for Vessel No. 1, (id. at 47); breach of implied warranty relating to Vessel No. 2, (id. at 49); breach of express warranty relating to Vessel No. 2, (id. at 54); violations of the Magnuson-Moss Warranty Act for Vessel No. 2, (id. at 56); negligent property damage, (id. at 59); negligent bodily injury, (id. at 60); civil theft and conversion, (id. at 61); abuse of process,

(id. at 62); bad faith, (id. at 63); violations of North Carolina's Unfair and Deceptive Trade Practice Act ("UDTPA"), (id. at 64); and unjust enrichment, (id. at 67.)

## II. DISCUSSION

"A district court should dismiss a complaint pursuant to Rule 12(b)(6) if, accepting all well-pleaded allegations in the complaint as true and drawing all reasonable factual inferences in the plaintiff's favor, the complaint does not allege enough facts to state a claim to relief that is plausible on its face." Vitol, S.A. v. Primerose Shipping Co., 708 F.3d 527, 539 (4th Cir. 2013). "[T]he court need not accept the [plaintiff's] legal conclusions drawn from the facts, nor need it accept as true unwarranted inferences, unreasonable conclusions, or arguments." Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (internal quotation marks and citation omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); accord Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

**A. Hatteras**

Hatteras moves to dismiss Acquaviva and Spisso's amended counterclaim on six grounds. (See Mem. Supp. Mot. Dismiss, DE # 60, at 3.) First, "[t]he economic loss rule bars all of Acquaviva and Spisso's non-contractual claims[.]" (Id.) Second, "Spisso fails to state a claim for personal injury as his alleged damages are speculative[.]" (Id.) Third, "Acquaviva has expressly released Hatteras from all claims related to 'Vessel [No.] 1' pursuant to the Settlement Agreement between the parties[.]" (Id.) Fourth, "Acquaviva and Spisso fail to state a claim for breach of contract based on the Uniform Commercial Code [("UCC")]." (Id.) Fifth, "Acquaviva

3

and Spisso fail to allege a cause of action under [the UDTPA]." (Id. at 4.) Finally, Hatteras alleges "Acquaviva and Spisso improperly intermingle allegations against Hatteras with those against separate legal entities Brunswick [] and Versa Capital." (Id.)

### 1. Economic Loss Rule (Count 9)

Hatteras contends that Acquaviva and Spisso fail to state a claim as to Count 9—negligent property damage—because they brought their "non-contractual claim in tort for the same conduct and the same alleged damages giving rise to their beach of contract claims." (Mem. Supp. Mot. Dismiss, DE # 60, at 9.) As such, Hatteras contends Count 9 is barred by the economic loss rule, which it asserts "prohibits recovery for purely economic loss in tort, as such claims are instead governed by contract law." (Id. (citing Lord v. Customized Consulting Specialty, Inc., 643 S.E.2d 28, 30 (N.C. Ct. App. 2007)).) In response, Acquaviva and Spisso contend they have alleged facts to meet each of the four exceptions to the economic loss rule:

> passengers suffered personal injuries[;] Mr. Spisso suffered personal injuries[;] injury was to the vessel that was the subject of the Settlement Agreement and arose from Hatteras's employee's leaving his tool bag of combustible items in the engine room when the vessel was still in the custody of Hatteras as bailee[;] injury was to the vessel that was the subject of the Settlement Agreement, and if, as Hatteras insists, it had been fully delivered at the time of the fire, then Hatteras's employee was trespassing with his tool bag of combustible items.

(Resp. Opp'n, DE # 67, at 15 (internal footnotes omitted).)

"The economic loss rule addresses the intersection between contract remedies (including warranty remedies) and tort remedies." Kelly v. Georgia-Pac. LLC, 671 F. Supp. 2d 785, 791 (E.D.N.C. 2009). Under the rule, "recovery for purely economic loss in tort [is prohibited] when a contract, a warranty, or the UCC operates to allocate risk." Id. (providing that a promisee and promisor do not become fiduciaries to one another by entering into a contract). Such economic loss should be recovered through contractual remedy as opposed to an action in tort. Id. at 794.

However, there are four scenarios when the economic loss rule does not apply under North Carolina law where a contracting party could be liable for negligence:

> (1) The injury, proximately caused by the promisor's negligent act or omission in the performance of his contract, was an injury to the person or property of someone other than the promisee[;] (2) The injury, proximately caused by the promisor's negligent, or wilful, act or omission in the performance of his contract, was to property of the promisee other than the property which was the subject of the contract, or was a personal injury to the promisee[;] (3) The injury, proximately caused by the promisor's negligent, or wilful, act or omission in the performance of his contract, was loss of or damage to the promisee's property, which was the subject of the contract, the promisor being charged by law, as a matter of public policy, with the duty to use care in the safeguarding of the property from harm, as in the case of a common carrier, an innkeeper or other bailee[;] (4) The injury so caused was a wilful injury to or a conversion of the property of the promisee, which was the subject of the contract, by the promisor.

N.C. State Ports Auth. v. Lloyd A. Fry Roofing Co., 240 S.E.2d 345, 350–51 (N.C. 1978) (internal citations omitted).

As pled, Acquaviva and Spisso state a claim as to the third exception. Specifically, Acquaviva and Spisso claim "Hatteras and Mr. Rice[, a Hatteras employee,] breached their duty of care when Mr. Rice left combustible items in a tool bag in the engine room of a ship at sea." (Am. Countercl., DE # 44-1, ¶ 271.) At that time, Acquaviva and Spisso, allege Vessel No. 2 was in its delivery stage from Hatteras to Spisso. (Id. ¶¶ 86–89). This allegation supports the conclusion that Hatteras was a bailee at the time. See Pennington v. Styron, 153 S.E.2d 776, 779 (N.C. 1967) (finding a bailor/bailee relationship when the plaintiff and the defendant had agreed "that the plaintiff [could] store[] his boat with the defendant, and that the defendant was to keep it tied up, pump the rain water out of it, and generally to protect it during the winter"). As only one exception to the economic loss rule is needed in order for Acquaviva and Spisso to state a claim as to negligent property damage, the court will not address the other three exceptions. Hatteras' motion as to Count 9 will be denied.

5

## 2. Bodily Personal Injury (Count 10)

Hatteras contends Acquaviva and Spisso have failed to state a claim as to Count 10—negligent bodily injury—because Spisso's claims that he "inhaled noxious smoke and 'experience[d] severe emotional distress" do not sufficiently allege damages for a prima facie case of negligence. (See Mem. Supp. Mot. Dismiss, DE # 60, at 11.) Further, Hatteras contends Spisso's claim that he inhaled noxious smoke does not meet the pleading requirements of Twombly and Iqbal because "[h]e has not alleged that inhaling smoke has caused him any bodily injury." (Id.) Additionally, Hatteras contends "Spisso has failed to allege any facts that, if proven, would support a claim for emotional distress" because he alleges "mere temporary fright[.]" (Id. at 11–12.)

"To make out a prima facie case of negligence, a plaintiff must show that: (1) the defendant owed the plaintiff a duty of care; (2) the defendant's conduct breached that duty; (3) the breach was the actual and proximate cause of the plaintiff's injury; and (4) damages resulted from the injury." Parker v. Town of Erwin, 776 S.E.2d 710, 729–30 (N.C. Ct. App. 2015) (internal citation and quotation marks omitted). On the other hand,

> to state a claim for negligent infliction of emotional distress [("NIED")], a plaintiff must allege that (1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress . . . , and (3) the conduct did in fact cause the plaintiff severe emotional distress.

Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A., 395 S.E.2d 85, 97 (N.C. 1990). Severe emotional distress is an essential element of a claim for NIED, but it is wholly distinct from the emotional suffering that may be part of a claim seeking damages for general pain and suffering. See Iadanza v. Harper, 611 S.E.2d 217, 221–22 (N.C. Ct. App. 2005). As such, a plaintiff may plead damages for emotional distress as part of a negligence claim without proving

severe emotional distress.  See Owens v. Dixie Motor Co., No. 5:12–CV–389–FL, 2014 WL 12703392, at *14 (E.D.N.C. Mar. 31, 2014) (finding that plaintiff's failure to demonstrate severe emotional distress did not preclude her claim for negligence); Wheeless v. Maria Parham Med. Ctr., Inc., No. COA13–1475, 2014 WL 3510602, at *4 (N.C. Ct. App. July 15, 2014) (table decision).  Additionally, plaintiff need not plead physical injury in order to claim emotional distress damages.  See Iadanza, 611 S.E.2d at 221 ("Pain and suffering damages are intended to redress a wide array of injuries ranging from physical pain to anxiety, depression, and the resulting adverse impact upon the injured party's lifestyle.") (internal citation omitted).

In their amended counterclaim, Aquaviva and Spisso bring a general negligence claim as opposed to a claim for NIED.  As such, the court will not impose the psychological distress standard for an NIED claim on the emotional distress damages requested with plaintiff's negligence claim.  Further, Acquaviva and Spisso's allegations in the amended complaint state a claim as to negligent bodily injury:

> As a proximate cause of Hatteras's and Mr. Rice's negligence, Mr. Spisso sustained personal injuries, including inhaling noxious and toxic smoke and experiencing emotional distress.
> Mr. Spisso's emotional distress was intensified due to Hatteras's conduct before and after the fire.

(Am. Countercl., DE # 44-1, ¶¶ 279, 280.)  Hatteras' motion as to Count 10 will be denied.

### 3. Settlement Agreement (Counts 1, 3, 4, 5, and 14)

Hatteras contends that Acquaviva and Spisso's claims relating to Vessel No. 1, namely counts 1, 3, 4, 5, and 14, should be dismissed because such claims were "expressly released" in the 2015 settlement agreement between the parties (the Settlement and Release Agreement). (See Mem. Supp. Mot. Dismiss, DE # 60, at 13.)  Further, Hatteras contends that "Vessel [No.] 2 was not an 'attempt to cure the total non-conformity of Vessel No. 1' as alleged by the Plaintiff,

7

but was a fully new contract for purchase of a second vessel which subsumed and extinguished all claims related to Vessel [No.] 1." (Id. at 16–17.) In response, Spisso and Acquaviva contend that Hatteras' breach of the Settlement and Release Agreement, including its failing to deliver a new vessel with the proper specifications, was a complete breach of the agreement, thereby rescinding the agreement as a whole, along with Spisso's obligations contained therein. (See Resp. Opp'n, DE # 67, at 20.)

"To state a claim for breach of contract, the complaint must allege that a valid contract existed between the parties, that defendant breached the terms thereof, the facts constituting the breach, and that damages resulted from such breach." Grich v. Mantelco, LLC, 746 S.E.2d 316, 319 (N.C. Ct. App. 2013) (internal citation omitted). "As a general rule, if either party to a bilateral contract commits a material breach of the contract, the non-breaching party is excused from the obligation to perform further. Whether a breach is material or immaterial is ordinarily a question of fact." McClure Lumber Co. v. Helmsman Const., Inc., 585 S.E.2d 234, 239 (N.C. Ct. App. 2003) (internal quotation marks and citations omitted). "Not every breach of a contract justifies a cancellation and rescission. The breach must be so material as in effect to defeat the very terms of the contract." Childress v. C. W. Myers Trading Post, Inc., 100 S.E.2d 391, 395 (N.C. 1957); accord Boss Urgent Care, PLLC v. Urgent Care Works, LLC, No. 7:11–CV–00071–FL, 2012 WL 1825328, at *8 (E.D.N.C. May 18, 2012). "Rescission does not merely terminate the contract so as to release the parties from further obligations to each other; rather, it abrogates the contract from its beginning and restores the parties to the position they would have been in had the contract not been made." Johnson v. Smith, Scott & Assocs., Inc., 335 S.E.2d 205, 207 (N.C. Ct. App. 1985).

Here, Acquaviva and Spisso allege that Hatteras breached the Settlement and Release Agreement by failing to perform a variety of its provisions. (See Am. Countercl., DE # 44-1, ¶¶ 175–176, 181.) Specifically, Acquaviva and Spisso claim:

> Hatteras breached the Settlement and Release Agreement in that Hatteras did not provide a vessel that conformed to the terms of the Settlement and Release Agreement. Among other non-conformities, the vessel was not a 'New Vessel' or a 2017 model year vessel because it was fire-damaged, suffering a significant diminution in value in 2016 and could not be considered a 2017 model year 'New Vessel.' Among other non-conformities, the vessel was not equipped with a properly working fire suppression system.

(Id. ¶ 175.) Further, Acquaviva and Spisso allege the purpose of "[t]he Settlement and Release Agreement was to serve as a cure of Hatteras' breaches of the Purchase Agreement entered into on December 12, 2012." (Id. ¶ 170.) Two excerpted provisions of the Settlement and Release Agreement read:

> [O]n the terms of this Agreement, Hatteras shall build and sell to Buyer, and Buyer shall purchase from Hatteras, a 2017 model year 70MY vessel (the "New Vessel").

(Id. at Ex. 3 ¶ E.)

> 3. Transfer of Trade Vessel. On or before April 8, 2015, Buyer shall deliver to Hatteras the Trade Vessel and shall execute all necessary and appropriate documentation to transfer and assign title and ownership of the Trade Vessel to Hatteras free and clear of all liens, claim and encumbrances. Hatteras shall have no obligation under this Agreement until (i) it receives title and ownership of the Trade Vessel free and clear of all liens, claims and encumbrances and (ii) Buyer has complied with its obligations set forth in Section 2 of this Agreement.

(Id. ¶ 3.) As such, Acquaviva and Spisso have stated a claim of breach of contract as to the Settlement and Release Agreement and that said breach relieves Spisso of all obligations under the contract. If the contract were rescinded, all provisions would not be enforceable. See Johnson, 335 S.E.2d at 207. Hatteras' motion will be denied as to Counts 1, 3, 4, 5, and 14.

### 4. UCC (Counts 1 and 2)

Hatteras requests "to the extent Counts 1 and 2[, breach of contract claims,] are premised upon allegations of conduct that breached the UCC, but which did not also breach any identified contractual obligation, they should be dismissed." (Mem. Supp. Mot. Dismiss, DE # 60, at 18.) "Federal pleading rules call for a short and plain statement of the claim showing that the pleader is entitled to relief, Fed. R. Civ. P. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." Johnson v. City of Shelby, Miss., 574 U.S. 10, 11 (2014) (internal quotation marks omitted). "One must not dismiss the complaint 'unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged.'" Harrison v. U.S. Postal Serv., 840 F.2d 1149, 1152 (4th Cir. 1988) (internal citation omitted). However, "courts (and defendants) should not be forced to sift through a complaint in a search for a cause of action." Clendenin v. Wells Fargo Bank, N.A., No. 2:09–cv–00557, 2009 U.S. Dist. LEXIS 109952, at *9 (S.D. W. Va. Nov. 24, 2009) (finding failure to identify contract provisions, what types of fees illegal or unauthorized, when or how the entity discouraged payment, and how the entity serviced their loan did not meet pleading requirements).

Acquaviva and Spisso, in Counts 1 and 2, provide a short and plain statement of their breach of contract claims showing that they are entitled to relief. (See Am. Countercl., DE # 44-1, ¶¶ 156–187.) At this juncture, they are not required to provide a perfect statement of all legal theories entitling them to relief; rather, only that *any* legal theory would entitle them to relief. Hatteras' motion as to Counts 1 and 2 will be denied.

### 5. North Carolina's UDTPA (Count 14)

Hatteras contends "Acquaviva and Spisso rely on the same allegations pled in support of their breach of contract claims to form the basis for their claim under UDTPA[.]" (Mem. Supp. Mot. Dismiss, DE # 60, at 19.) Additionally, Hatteras contends that Acquaviva and Spisso fail to allege actions that are "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers,' or 'amounts to an inequitable assertion of . . . power or position" to constitute a UDTPA violation. (Id. at 20.)

> To prevail on a claim of unfair and deceptive trade practice[s] a plaintiff must show (1) an unfair or deceptive act or practice, or an unfair method of competition, (2) in or affecting commerce, (3) which proximately caused actual injury to the plaintiff or to his business. A practice is deceptive if it has the capacity or tendency to deceive the average consumer, but proof of actual deception is not required. Whether the practice is unfair or deceptive usually depends upon the facts of each case and the impact the practice has in the marketplace. The plaintiff need not show fraud, bad faith, deliberate acts of deception or actual deception, but must show that the acts had a tendency or capacity to mislead or created the likelihood of deception.

Spartan Leasing Inc. v. Pollard, 400 S.E.2d 476, 482 (N.C. Ct. App. 1991) (internal quotation marks and citations omitted). "An act is unfair 'if it offends established public policy,' 'is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers,' or 'amounts to an inequitable assertion of . . . power or position." Champion Pro Consulting Grp., Inc. v. Impact Sports Football, LLC, 845 F.3d 104, 109 (4th Cir. 2016) (internal quotation marks and citations omitted).

"[A] mere breach of contract claim 'is not unfair or deceptive, . . . absent substantial aggravating circumstances.'" Ellis v. Louisiana-Pac. Corp., 699 F.3d 778, 787 (4th Cir. 2012) (internal citation omitted); see also S. Atl. Ltd. P'ship of Tennessee, L.P. v. Riese, 284 F.3d 518, 536 (4th Cir. 2002) (finding that conduct related to a breach of contract rarely violates the UDTPA, rather the breach must be particularly egregious to permit recovery under North

11

Carolina's UDTPA.). "Generally, '[t]he type of conduct that has been found sufficient to constitute a substantial aggravating factor has generally involved forged documents, lies, and fraudulent inducements." Champion Pro Consulting Grp., LLC v. Impact Sports Football, LLC, 116 F. Supp. 3d 644, 659 (M.D.N.C. 2015), aff'd, 845 F.3d 104 (4th Cir. 2016); Foley v. L & L Int'l, Inc., 364 S.E.2d 733, 736 (N.C. Ct. App. 1988) (finding a car salesman's choice to keep a customer's down-payment on a car for seven months without attempting to get the car it had promised to the customer, while falsely claiming that the car had been obtained and would be delivered shortly, as evidence of a deceptive trade practice). "Where the only acts alleged are themselves a breach of the contract between the parties, they will not support a UDTPA claim." Stack v. Abbott Labs., Inc., 979 F. Supp. 2d 658, 668 (M.D.N.C. 2013) (internal quotation marks and citations omitted).

Here, Acquaviva and Spisso claim the following acts violate the UDTPA:

a) Hatteras refused, without a reasonable basis in fact or law, to recognize rejection, or revocation of acceptance, of Vessel No. 1;
b) Hatteras refused, without a reasonable basis in fact or law, to recognize Counterclaim Plaintiffs' rejection, or revocation of acceptance, of Vessel No. 2;
c) Hatteras forced Counterclaim Plaintiffs repeatedly to take legal action to enforce their rights and remedies, which were clear under the law;
d) Hatteras made material misrepresentations and omitted material information it was under an obligation to reveal under the circumstances, in negotiating with Mr. Spisso to settle the action he filed regarding Vessel No. 1;
e) Hatteras failed to preserve evidence that it was under an obligation to preserve under the Uniform Commercial Code;
f) Hatteras spoiled evidence that it was under a duty to preserve in recognition of the rights of personal injury claimants as to which it had been given notice;
g) Hatteras interfered with inspection rights under the Uniform Commercial Code that arose due to its breaches of the Settlement and Release Agreement;
h) Hatteras sought to make a claim under an insurance policy purchased by and benefitting Counterclaim Plaintiffs when Hatteras had no right to do so;

12

> i) Hatteras exercised ownership and control over Vessel No. 2 after insisting that Counterclaim Plaintiffs owned it;
> j) Hatteras exercised ownership and control over Vessel No. 2, in which Counterclaim Plaintiffs had a security interest, constituting civil theft and conversion;
> k) Hatteras threatened unwarranted legal action in the form of an arrest to bully Counterclaim Plaintiffs into foregoing rights and remedies to which they are entitled under the law;
> l) Hatteras wrongfully claimed a maritime lien;
> m) Hatteras instigated a wrongful arrest to retaliate against Counterclaim Plaintiffs for exercising their rights and remedies under the law and to bully them into abandoning those rights and remedies;
> n) Hatteras abused procedural exceptions to the due process requirements of notice by obtaining an arrest warrant ex parte and without notice when the facts and circumstances did not authorize benefitting from the exception; and
> o) Hatteras made false and materially misleading representations to this Court to cause the seizure of Counterclaim Plaintiffs' property, damaging its value and forcing Counterclaim Plaintiffs to respond.

(Am. Countercl., DE # 44-1, ¶ 297.) While some of the alleged violations appear to be solely contractual, others sufficiently implicate deception, fraudulent inducement of a consumer into legal settlement, and falsification of documents through destruction of evidence. As such, Acquaviva and Spisso have stated a claim as to Count 14 and Hatteras' motion as to this count will be denied.

### 6. Intermingled Allegations (All Counts)

Hatteras contends that Acquaviva and Spisso's amended counterclaim does not specify which entities "are claimed to be liable for what [conduct]." (Mem. Supp. Mot. Dismiss, DE # 60, at 21.) Specifically, Hatteras argues, while

> [t]he Amended Counterclaim alleges that Brunswick and Versa Capital are 'alter egos of Hatteras and vice versa' and further allege that '(w)here liability for conduct is attributable to all three entities, they are referred to . . . collectively as the 'Hatteras Entities.' Thereafter, the Complaint makes no mention of the 'Hatteras Entities' but does, in varying ways, seem to attempt to hold all three entities liable, without any discernable distinction as to which claims are brought against which entities.

(Id. at 21 (citation omitted).)

Despite Hatteras' contentions to the contrary, the claims in the amended counterclaim against it are clear. While Acquaviva and Spisso do use the phrase "Hatteras Entities," such phrase is only employed in the "Parties and Key Persons" section as background information. (See Am. Countercl., DE # 44-1, ¶ 8.) Each of Acquaviva and Spisso's fifteen claims directly mention Hatteras by name and contain factual allegations against it. (Id. ¶¶ 156, 168, 188, 203, 214, 224, 243, 258, 259, 269, 282, 286, 281, 291, 304, 307.) Hatteras' motion as to all counts will be denied.

**B.     Brunswick and Versa Capital**

Brunswick moves to dismiss on three grounds:

> (1) Acquaviva and Spisso do not allege a legally cognizable basis for liability against Brunswick Corporation; (2) Acquaviva and Spisso expressly released Brunswick from all claims related to 'Vessel [No.] 1' pursuant to the Settlement and Release Agreement; [and] (3) Acquaviva and Spisso do not allege a basis to rescind the Settlement and Release Agreement as a matter of law.

(DE # 86, at 3.) Versa Capital moves on the same grounds as to its own interests. (DE # 88, at 3.) Both parties also alternatively move for a more definite statement.

**1.     Basis for Liability (All Counts)**

In the amended complaint, Acquaviva and Spisso raise allegations against Hatteras, Brunswick, and Versa Capital. Each count, one through fifteen, specifically names the entity against whom the claim is made except for counts 5, 8, 10, and 14. As to those counts, in addition to Hatteras, Acquaviva and Spisso bring their claims against unspecified "Counterclaim Defendants." (Am. Countercl., DE # 44-1, ¶¶ 214, 258, 259, 281, 304.) It is not clear whether Acquaviva and Spisso mean to hold Brunswick and Versa Capital liable in those counts. Rather

14

than dismiss those counts, the court will require Acquaviva and Spisso to provide a more definite statement under Rule 12(e).

> **2. Settlement Contract (Counts 1, 3, 4, 5)**

Similar to Hatteras' argument above, Brunswick and Versa Capital contend all claims related to Vessel No. 1 were expressly released pursuant to the Settlement and Release Agreement. (DE # 86, at 12; DE # 88, at 12.) Further, Brunswick contends that under North Carolina law, the right to rescind a contract is built upon fraud, mutual mistake or mistake of one party induced by the fraudulent or false representation of the other, none of which have been established as a threshold matter here. (Id. at 20.) For the reasons previously stated regarding Hatteras' similar motion to dismiss, Brunswick's and Versa Capital's motions will be denied as to counts 1, 3, 4, and 5.

### III. CONCLUSION

For the foregoing reasons, Hatteras' motion to dismiss is DENIED; Brunswick's and Versa Capital's motions to dismiss are DENIED; and, Brunswick's and Versa Capital's motions for a more definite statement are GRANTED as to counts 5, 8, 10, and 14.

This 6 November 2019.

_____
W. Earl Britt
Senior U.S. District Judge