IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:17–CV–00025–BR

| | |
|---|---|
| HATTERAS/CABO YACHTS, LLC, a foreign limited liability company, | ) ) ) |
| Plaintiff, v. | ) ) ) ORDER ) |
| M/Y EPIC (Official Number 747618, HIN: US-HATHR3021617), her engines, Boilers, tackle, apparel etc., in rem, and AQUAVIVA LTD., a foreign company, | ) ) ) ) ) |
| Defendants. | ) ) |

This matter is before the court on the joint motion of Hatteras/Cabo Yachts, LLC ("Hatteras"), Brunswick Corporation, and Versa Capital Management, LLC (collectively "Counterclaim Defendants") to strike paragraphs 155, 182, 247, and 264 from Aquaviva Ltd. and Daniel Spisso's (collectively "Counterclaim Plaintiffs") second amended counterclaim. (DE # 110.) Counterclaim Plaintiffs filed a response. (DE # 112.) This motion is ripe for disposition.

**I.  BACKGROUND**

This action arises out of disputes regarding two yachts manufactured by Hatteras, an entity owned by Brunswick Corporation ("Brunswick") until August 2013, and since by Versa Capital Management, LLC ("Versa Capital"). (DE # 30, at 25, 27; DE # 43, at 3.) Spisso, Acquaviva's agent, entered into a sales contract for the construction of the first yacht, a model GT63 ("Vessel No. 1"), on or about 12 December 2012. (DE # 30, at 25, 30; DE # 43, at 3.) In December 2014, Spisso filed suit in the Southern District of Florida, Case No. 1:14-cv-24616-FAM, alleging breach of contract, breach of warranties, violation of the Magnuson-Moss Warranty Act, and seeking rescission, revocation, and damages arising from the purchase of Vessel No. 1. (DE # 30, at 36; DE # 43, at 4.) On 8 April 2015, Spisso entered into a settlement agreement with Hatteras, Brunswick, and others, which purported to resolve the litigation surrounding Vessel No. 1 and constituted a purchase/sale of Vessel No. 2. (DE # 30, at 36; DE # 43, at 4; Def.'s Am. Countercl. (DE # 44-1) Ex. 3 at 81.)

On 17 September 2016, the day after Spisso arrived to take possession of Vessel No. 2, the vessel caught fire with him and guests onboard, resulting in smoke damage to the vessel. (DE # 1, at 2; DE # 30, at 40–41.) Thereafter, Vessel No. 2 was returned to shore where Hatteras took custody of it. (DE # 1, at 2–3; DE # 30, at 43.) Hatteras offered to repair the damage to the vessel while it remained in Hatteras' custody. (DE # 1, at 3; DE # 30, at 44.) Spisso did not authorize Hatteras to complete the repairs, and Hatteras insisted that he retake possession of the vessel. (DE # 1, at 3; DE # 30, at 45.) Hatteras notified Spisso that expenses for necessaries were accruing while the vessel remained in its possession. (DE 1, at 3; DE # 30, at 47.) Spisso alleges that Hatteras refused to allow him to properly inspect the vessel and otherwise acted inconsistently with his purported ownership. (DE # 30, at 45–47.) Ultimately, the vessel remained at Hatteras' dock until Spisso took retook possession of the vessel in February 2017. (DE # 1, at 3; DE # 30, at 48.) During that five month period, Hatteras alleges that the costs associated with the provision of necessaries totaled $24,340.52. (DE # 1, at 4.)

Hatteras commenced this action against Vessel No. 2, in rem, and Acquaviva, in personam, on 2 March 2017. On 4 June 2018, the court denied Acquaviva's motion to dismiss. (DE # 29.) Acquaviva counterclaimed on 18 June 2018[.]

(DE # 57, at 1–2.)

On 24 August 2018, Hatteras moved to dismiss Acquaviva's 18 June 2018 counterclaim. (Id. at 3.) "Thereafter, Spisso filed a motion to intervene as defendant and counterclaim [against Hatteras] and attached an amended counterclaim on behalf of himself and Acquaviva." (Id.) On 10 January 2019, this court allowed Spisso's motion to intervene by interlineation and allowed Acquaviva and Spisso to amend their counterclaim. (Id.) As such, the court denied Hatteras' motion to dismiss the 18 June 2018 counterclaim. (Id. at 7.)

(DE # 98, at 2.) Counterclaim Defendants then each moved to dismiss Acquaviva and Spisso's amended counterclaim. (DE ## 59, 85, 87.) The court denied those motions on 6 November 2019 but allowed Brunswick's and Versa Capital's motions for a more definite statement as to counts 5, 8, 10, and 14. (See DE # 98, at 15.) In doing so, the court noted: "It is not clear whether [Counterclaim Plaintiffs] mean to hold Brunswick and Versa Capital liable in those counts. Rather than dismiss those counts, the court will require [Counterclaim Plaintiffs] to provide a more definite statement under Rule 12(e)." (Id. at 14–15.) One week later, Counterclaim Plaintiffs filed a second amended counterclaim. (DE # 99.)

2

The second amended counterclaim clarifies Counterclaim Plaintiffs' intent to hold Brunswick, Versa Capital, and Hatteras liable for counts 5, 8, 10, and 14. (DE # 99, at 55, 68, 74, 80.) However, the second amended counterclaim also revises some and adds other factual allegations. (Compare DE # 44-1, with DE # 99.) On 13 December 2019, Counterclaim Defendants moved to strike four paragraphs from the second amended counterclaim as untimely, asserted without requisite leave of court, and after the close of discovery. (DE # 110; DE # 111, at 2.)

## II. DISCUSSION

Rule 15 of the Federal Rules of Civil Procedure governs amendments to pleadings.[1] Fed. R. Civ. P. 15. This rule permits amendment as a matter of course within 21 days after serving a pleading, or "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or . . . motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1)(A)−(B). "In all other cases, a party may amend its pleading *only* with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2) (emphasis added).

The original counterclaim was filed on 18 June 2018 and Counterclaim Defendants moved to dismiss on 24 August 2018. (DE ## 30, 42.) "Thus, Rule 15(a) allowed amendment, without leave, through 14 September 2018. [Counterclaim Plaintiffs] filed their amended counterclaim on 11 September 2018, within the timeframe allowed by Rule 15(a)." (DE # 57, at 5.) Hatteras then moved to dismiss the first amended counterclaim on 08 February 2019, and

---

[1] "[Rule 15(a)(2)] applies, however, prior to entry of a scheduling order, at which point, under Rule 16(b)(4), a party must first demonstrate 'good cause' to modify the scheduling order deadlines, before also satisfying the Rule 15(a)(2) standard for amendment." Cook v. Howard, 484 F. App'x 805, 814–15 (4th Cir. 2012) (citation omitted). Although the second amended counterclaim seemingly came after the deadlines contemplated in the scheduling order, Counterclaim Defendants did not raise this issue and the court will not analyze it. See Laber v. Harvey, 438 F.3d 404, 427 n.23 (4th Cir. 2006).

3

Brunswick and Versa Capital did the same on 26 March 2019. (DE ## 59, 85, 87.) Therefore, even if Counterclaim Plaintiffs had a remaining right to amend as a matter of course, the second amended counterclaim filed on 13 November 2019 was certainly untimely under Rule 15(a)(1). See Fed. R. Civ. P. 15; (DE # 99.) Accordingly, to properly amend the counterclaim a second time, Counterclaim Plaintiffs required "the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).

Counterclaim Plaintiffs did not seek consent of Counterclaim Defendants or leave of this court to file the second amended counterclaim. (See DE # 111, at 5.) However, Counterclaim Plaintiffs contend "[t]he Court ordered [them] to amend, and so it is fair to say that leave was given." (DE # 112, at 16–17 (citing (DE # 98)).) They further contend "[b]ecause they have not raised new causes of action, sought new forms of relief, or named new parties, they have not exceeded the scope of leave to amend granted by the Court." (Id. at 12.)

On 6 November 2019, the court ordered "[Counterclaim Plaintiffs] to provide a more definite statement under Rule 12(e)" because "[i]t [was] not clear whether [they] mean[t] to hold Brunswick and Versa Capital liable in [counts 5, 8, 10, and 14]." (DE # 98, at 14–15.) Counterclaim Plaintiffs did not request, and the court did not authorize, any further amendment. Thus, the second amended counterclaim was improperly filed, see Laschkewitsch v. Lincoln Life & Annuity Distribs., Inc., No. 5:13-CV-315, 2014 U.S. Dist. LEXIS 26978, at *3 (E.D.N.C. Feb. 24, 2014) (citation omitted) (deeming an amendment "improperly filed" when plaintiff failed to properly secure leave); Massenburg v. Innovative Talent Sols., No. 5:16-CV-00957, 2018 U.S. Dist. LEXIS 82571 (E.D.N.C. May 15, 2018) ("If a party fails to follow the Federal and Local Rules when moving for leave to amend . . . she risks delaying the amendment process or losing the opportunity to amend altogether."), and it may be stricken, see Jiangmen Kinwai Furniture

4

Decoration Co. v. IHFC Props., LLC, 780 F. App'x 1, 4 n.2 (4th Cir. 2019) ("But Rule 12(f) is not the only basis for striking a complaint. A district court may also strike a complaint filed without leave of the court in violation of Rule 15(a)(2).").

Counterclaim Defendants assert that a motion for leave to amend, if filed, "would be due to be denied as the proposed addition of these claims would be extremely prejudicial . . . and [Counterclaim Plaintiffs] were dilatory in failing to bring them earlier." (DE # 111, at 5 (citation omitted).) Counterclaim Plaintiffs contend "these are not new claims . . . but are instead additional *proof* of the exact same claims that have been pending for more than a year." (DE # 112, at 9.) They further contend that Counterclaim Defendants had access to the newly alleged information and thus would not be prejudiced by the proposed amendment.

Although "'leave shall be freely given when justice so requires,' leave to amend is not to be granted automatically. Chase Fed. Bank v. Am. Bankers Ins. Co., No. 88-501-CIV-5-H, 1992 U.S. Dist. LEIXS 7552, at *11 (E.D.N.C. Jan. 23, 1992) (quoting Deasy v. Hill, 833 F.2d 38, 40 (4th Cir. 1987)). The district court has "broad discretion concerning motions to amend pleadings[.]" Booth v. Maryland, 337 F. App'x 301, 312 (4th Cir. 2009). A motion to amend may be denied for reasons "'such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment or futility of the amendment.'" Id. (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)). "[D]elay alone is not a sufficient reason to deny a motion to amend under Rule 15(a). Rather, the delay must be accompanied by prejudice, bad faith, or futility." Rich Food Servs. v. Rich Plan Corp., No. 5:99-CV-677, 2001 U.S. Dist. LEXIS 25955, at *49 (E.D.N.C. Nov. 19, 2001) (citing Edwards v. City of Goldsboro, 178 F.3d 231, 242 (4th Cir. 1999)).

"Under Rule 15(a)(2), 'prejudice means that the party opposing the amendment would be hindered in the preparation of its case, or would have been prevented from taking some measure in support of its position.'" Hunt Valley Baptist Church, Inc. v. Balt. Cty., No. ELH-17-804, 2019 U.S. Dist. LEXIS 119540, at *10 (D. Md. July 17, 2019) (quoting 61A AM. JUR. 2d, Pleading § 723); see also Deasy, 833 F.2d at 41. Thus, undue prejudice may justify denying a motion to amend if the amendment would require "the non-moving party to 'expend significant additional resources to conduct discovery and prepare for trial,' [or] would 'significantly delay the resolution of the dispute[.]'" Hunt Valley, 2019 U.S. Dist. LEXIS 119540, at *10 (quoting 61A AM. JUR. 2d, Pleading § 273). "A change in the theory of recovery may obviously sometimes cause substantial prejudice to a defendant, justifying denial of a motion to amend to assert that theory." Ward Elec. Serv. Inc. v. First Commercial Bank, 819 F.2d 496, 497 (4th Cir. 1987). "An amendment is not prejudicial, by contrast, if it merely adds an additional theory of recovery to the facts already pled and is offered before any discovery as occurred." Laber, 438 F.3d at 427 (citation omitted).

The paragraphs at issue here—155, 182, 247, and 264—allege defects in "the fire alarm and fire suppression system, the fuel tanks, the woodwork, and the door and window seals." (See, e.g. DE # 99, at 62.) These alleged defects "were discovered during the course of repairing the fire damage," the subject-matter of this lawsuit. (Id.) Allegations about these defects were made nearly three years into this litigation, almost 17 months after the filing of the original counterclaim, and several months after Counterclaim Plaintiffs reportedly discovered them. (DE # 112, at 3 (noting the defects were discovered "during the sea trial," which occurred "during the summer.")) Despite retaining experts and conducting "extensive discovery" into Counterclaim

Plaintiffs' claims "regarding the engine room fire and fire suppression system," Counterclaim Defendants

> did not conduct any discovery regarding the [vessel's] fuel tanks, interior woodwork, or door and window seals, nor did [they] retain experts to address these issues, as these claims were not raised in the pleadings, nor were they ever raised by [Counterclaim Plaintiffs] in their responses to any other discovery.

(DE # 111, at 5−6.) Nonetheless, Counterclaim Plaintiffs contend that Counterclaim Defendants had equal opportunity to discover the newly alleged defects because they were notified of the sea trial and were served "documents regarding the fuel tank leak on September 5, 2019." (DE # 112, at 3−4.) In order to defend against these defects, Counterclaim Defendants contend they "need to conduct additional written discovery to discover the nature of the alleged defects, take depositions of individuals with knowledge of these claims, and retain experts to conduct an inspection of the [vessel] with respect to these claims and offer their opinions." (DE # 111, at 4.) Discovery, however, closed on 22 October 2019, three weeks before Counterclaim Plaintiffs filed their second amended counterclaim. (DE # 96, at 2.)

The paragraphs at issue here raise new issues, not previously considered by Counterclaim Defendants, that would require significant additional resources to defend. (See DE # 111, at 4.); see also Laber, 438 F.3d at 427. Contrary to Counterclaim Plaintiffs' contentions that these paragraphs merely fall within the broad umbrella of breach of contract and warranty, they introduce additional facts about which Counterclaim Defendants have conducted no discovery. (DE # 112, at 9−10); compare Deasy, 833 F.2d at 41 (recognizing a party's right to conduct discovery and denying amendment when they were deprived of the opportunity to do so), with Rich, 2001 U.S. Dist. LEXIS 25955 (allowing amendment where plaintiff sought "to incorporate, as enumerated allegations, facts included in the material previously submitted to this court."). "A complaint is meant to state the issues of a case so that the parties can conduct

7

discovery and present their cases intelligently." Deasy, 833 F.2d at 41. Hinting at a claim, even in an expert's report, leaves the opposing party guessing and does not provide adequate opportunity for discovery. Id. (denying amendment, even where defendant deposed plaintiff's experts on the issue as "a natural precaution since the issue was raised in their statements" but not in the complaint).

While Counterclaim Plaintiffs suggest Counterclaim Defendants could seek leave to conduct additional discovery, a costly and time-consuming process to reopen three years into litigation, even they admit it is "unlikely that [the individuals who discovered the new issues] would be amendable to further participation in this case." (DE # 112, at 16.) The inability to investigate the facts alleged in the untimely and improperly filed amendment, would result in substantial prejudice to Counterclaim Defendants. See Laber, 438 F.3d at 427; Deasy, 833 F.2d at 41; cf. Microspace Commc'ns. Corp. v. Guest-Tek Interactive Entm't, Inc., No. 5:14-CV-535-F, 2015 U.S. Dist. LEXIS 108050, at *12 (E.D.N.C. Aug. 17, 2015) (finding no prejudice when amendment was timely filed, notice of the newly pled defense was given in discovery, and discovery remained open at the time of filing). As such, Counterclaim Defendants' motion to strike paragraphs 155, 182, 247, and 264 will be allowed.

### III. CONCLUSION

For the reasons stated herein, Counterclaim Defendants' motion to strike paragraphs 155, 182, 247, and 264 is GRANTED. These paragraphs are hereby deemed removed from the second amended counterclaim.

This 3 April 2020.

_____
W. Earl Britt
Senior U.S. District Judge